UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

PRO SE PRISONER CIVIL RIGHTS COMPLAINT

CASE NO. _3:21CV25(MPS)_

PLAINTIFF(S) [Write the name(s) of the person(s) complaining]

JAN 8 2021 AM 11:55
FILED-USDC-CT-NEW HAVEN

_Christopher M Plaskon_

_____

_____

_____

_____

VS.

DEFENDANT(S) [Write the name(s) of the person(s) you are suing.   If you do not know
a name, write "John Doe" or "Jane Doe."   Include the defendant's rank or title if you know
it.]

_See attached_

_____

_____

_____

_____

Complete every section and SIGN THE LAST PAGE.

_Revised 4/13/18_

VS.

<u>Defendant(s)</u>
Commissioner John Doe
Warden Barone
Warden Secretary Jane Doe
RCOO Kirsten Shea
APRN McPheesia
APRN Jane Doe

## A. JURISDICTION

Because federal courts cannot hear every kind of claim, you must identify the law that says this court can hear your claim. There are two possibilities. Check one.

I can bring my complaint in federal court because I am suing:

1. _____✓_____ State, county or city employees for violating my federal rights under 42 U.S.C. Sec. 1983/1985/1986; OR

2. _____ Federal employees for violating my federal rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Sec. 1331.

## B. PLAINTIFF (THE PERSON FILING THIS COMPLAINT)

If there is more than one plaintiff, attach additional pages. Provide items a, b, and c for each plaintiff.

1. First Plaintiff
   a. Full Name: Christopher Michael Plaskon
   b. Inmate Number: 402845
   c. Correctional facility: Marc Dougall

2. Second Plaintiff
   a. Full Name:
   b. Inmate Number:
   c. Correctional facility:

## C. DEFENDANT (THE PERSON WHOSE ACTIONS YOU ARE COMPLAINING ABOUT)

If you are suing more than one person, attach additional pages. Provide items a, b, and c for each defendant.

1. First Defendant
   a. Full Name: John Doe

*Revised 4/13/18*

2

b. Rank or Title: Commissioner

c. Workplace: 24 Wolcott Hill Rd.

2. Second Defendant
   a. Full Name: "Jane" Barone

   b. Rank or Title: Warden

   c. Workplace: MacDougal C.I.

3. Third Defendant
   a. Full Name: Jane Doe

   b. Rank or Title: Warden Secretary

   c. Workplace: MacDougal C.I.

4. Fourth Defendant
   a. Full Name: Kirsten Shea

   b. Rank or Title: RCOO

   c. Workplace: MacDougal C.I.

5. Fifth Defendant
   a. Full Name: "Jane" McPheesia

   b. Rank or Title: APRN

   c. Workplace: MacDougal C.I.

6. Sixth Defendant
   a. Full Name: Jane Doe

   b. Rank or Title: APRN

   c. Workplace: MacDougal C.I.

## D. REASON FOR COMPLAINT

WARNING: Contact Inmate Legal Aid Program. Common mistakes can get your
*Revised 4/13/18*

3

case dismissed as frivolous or for failure to state a good legal claim. If this happens, you will still have to pay the filing fee, even if you are proceeding in forma pauperis. To avoid losing your filing fee, please read this information carefully and consult Inmate Legal Aid Program before you file.

1. Failure to use the prison grievance process before suing. If you have not followed all the steps in the grievance process before you come to court, the defendants may ask the Court to dismiss your claims for "failure to exhaust administrative remedies."

2. Complaining about incidents that happened a long time ago: If you are suing about events that happened more than three years ago, the defendants may ask the Court to dismiss your case under the "statute of limitations."

3. Suing people who were not personally involved: You can generally only sue defendants who were directly involved in harming you. In order to sue a supervisor, you must usually show that the supervisor knew about the actions of other defendants and failed to stop them.

4. Suing defendants who have immunity to suit for money damages: You generally cannot sue the following people and entities for money damages: the State of Connecticut; agencies of the state (like the Department of Correction); the United States government; the President of the United States (for actions taken while President); judges (for actions taken in connection with judicial duties); parole board officers (for actions taken in imposing parole conditions or revoking parole); prosecutors (for actions taken in performing duties integral to the criminal judicial process). If you think you have a claim for money damages against such people or entities, check with Inmate Legal Aid Program first. If you name defendants who are immune to suit from money damages and your suit is dismissed on that basis, you will lose your filing fee.

5. Complaining about a criminal conviction or prison disciplinary proceeding that resulted in loss of good time credits or other change to your time in prison. If winning your claims "would necessarily imply the invalidity" of a criminal conviction or prison disciplinary punishment affecting the time served, then you cannot make these claims under Section 1983 unless you have already had the conviction or prison disciplinary proceeding invalidated, for example through a habeas proceeding. See *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Please note that this is not a complete list of the problems you might encounter with your case. The Court cannot give you legal advice and will not appoint a lawyer for you until it is clear that you have a good legal claim. Until then, your best strategy is to call the Inmate Legal Aid Program before you file a complaint. If Inmate Legal Aid Program says you do not have a good case, you should consider that advice very seriously.

Now you need to explain how your federal rights were violated (remember that not every
*Revised 4/13/18*

violation of state law or prison regulations amounts to a violation of federal law). What you need to tell the Court is who did what, when they did it, and how you were harmed.

You do not need to cite to the Constitution, any statutes, or any cases. However, it is important to be specific about dates, times, and the names of the people involved. It is helpful to put each important fact in a separate, numbered paragraph.

If you do not know the name of the person who harmed you, call that person Defendant Doe and provide some information from which it will be possible to identify the person - for example, gender, rank and shift. If there is more than one defendant whose name you do not know, call them Defendant Doe1, Defendant Doe2, and so on.

Here is an example of the proper way to describe your claims:

Example of Statement of Case
1. On April 12, 2015, I fell and injured my foot during a basketball game with other prisoners.
2. After the game, I asked Defendant CO Brian Smith to let me see the nurse. Defendant CO Brian Smith told me that I could not see the nurse because it was not an emergency.
3. During the afternoon, my foot became swollen and very painful.
4. At about 5 p.m., in the presence of my cellmate Bill Bloggs, I told Defendant Lieutenant Jane Doe, who was the shift supervisor, that I needed a doctor and showed her my swollen foot.
5. Defendant Lieutenant Jane Doe brought me two Tylenol and told me that I could not see the nurse until sick call the next morning.
6. The next day, I could not get out of bed because my foot was so swollen and painful. I had to go to hospital and have an operation to fix my foot.
7. I had to take pain medication for two months after the operation and have needed a walking stick for support since that time.
Now describe your claims.

Statement of Case
1. See attached

2.

3.

*Revised 4/13/18*

5

D.) Reason for Complaint

## Introduction

This is a civil action seeking monetary damages against the following parties: Commissioner John Doe, Warden Barone, Warden secretary Jane Doe, RCOO Kirsten Shea, APRN McPheesia, and APRN Jane Doe for deliberate indifference and supervisor liability.

## Statement of Case

1.) On or about the date of November 7, 2018, the plaintiff began projectile vomitting and experiencing extreme diarrhea for hours after eating a typical meal.

2.) On November 8, 2018, the plaintiff sent an inmate request to the medical department in reference to his symptoms; as a result he was seen later that month regarding the issue. He was prescribed stool cards and sent back to his cell.

3.) In March, the pain became so severe that the plaintiff was transported to Uconn hospital for an emergency visit. This visit did not end in a remedy to the aforementioned symptoms. Therefore, in early April he sent another inmate request to the medical department to complain about the pain and in late April he was seen again and told that he would be scheduled to be seen by the provider.

4.) In early May, the plaintiff was seen by the provider and prescribed Pantoprazole and told he would be seen in thirty days for a follow-up. After thirty days he wrote another inmate request inquiring about the follow-up appointment and was told that he was on the list to be seen by the

provider.

5) After another thirty days of not being seen, the plaintiff wrote again and received an identical response.

6) Another thirty days went by without the plaintiff being seen. So he decided to send an inmate request to mental health about the sleep issues these symptoms began to cause him. The mental health worker informed him that his health file stated that he was scheduled to be seen; she personally contacted the medical staff and he was seen by the provider about a week later. The provider ordered various tests and prescribed him Metoclopramide. He was told he would be seen again once the results from the tests were received.

7) On August 28, 2019, the plaintiff forwarded yet another inmate request to medical, this time informing the provider that the medication had worsened his symptoms. A staff member responded by instructing him to sign up for prompt care (which does not handle medication issues).

8) On September 11, 2019, the plaintiff sent a follow-up request explaining that he had begun to experience a severe increase in pain in his abdomen and to inquire about the follow-up he was told would take place. In response to this request, the plaintiff received an unendorsed response, again instructing him to sign-up for prompt care.

9) In early October, the plaintiff filed a grievance regarding the aforedescribed medical issues and lack of medical attention.

10) In late November, the plaintiff was again seen regarding this issue. He was told

2

he would be taking more tests and once the results for said tests came back he would again meet with the provider to discuss an appropriate care plan.

11) On November 27, 2019, the plaintiff sent an inmate request to medical to find out when the testing would take place and received a response stating he would be told when the labtech would be available.

12) On December 13, 2019, the plaintiff sent a follow-up request and in response received a crossed out prompt care sticker attached to the request and a brief note informing him that he had tests pending.

13) Sometime in late December/early January 2020, the plaintiff went to prompt care and inquired about the aforementioned tests. As a result of this inquiry, he was called in immediately for the testing and again told he would be seen by the provider once the results were received. On January 6, 2020, the plaintiff wrote medical inquiring about the results of said tests and the date of his follow-up with the provider, the response he received had two different received dates and an actual response date of February 25, 2020. The response stated that he already met with the provider and that the issue was closed. However, he had not met with the provider until March 30, 2020.

14) In January 2020, the plaintiff had an attorney call the facility regarding the lack of care he was receiving and as a result, he was prescribed Senna plus, GasX, and another laxative (because it was assumed that he was constipated, despite the many times he explained to members of the medical staff that he had regular bowel movements).

15) On February 6, 2020, the plaintiff awoke in the middle of the night with

3

extreme abdominal pain and waited multiple hours to be seen by medical. Upon arrival, it was made known to him that he had lost a significant amount of weight in a very short period of time. He was then told he would have to see the provider regarding his abdominal pain. Later that day, the plaintiff experienced worsening pain in his stomach and was again sent to medical, but was refused care because he was not sent in accordance with protocol.

16) On February 7, 2020, the plaintiff again went to prompt care, and was told that he would not be seen by the provider, but instead would be undergoing another round of testing. Later that day, he was sent to get x-rays and told he had a moderate amount of stool in his colon and that if his symptoms worsened he should contact medical.

17) On February 18, 2020, the plaintiff sent an inmate request to medical describing an increase in pain he had begun to experience in his stomach and to inform the provider that the medication he was prescribed was not helping his symptoms.

18) On March 3, 2020, the plaintiff filed a second grievance about the aforedescribed stomach issues, which resulted in a visit with an interim provider on March 30, 2020. After this consultation, he was placed on a list to go to Uconn hospital to meet with a GI specialist (once non-emergency trips resumed).

19) The plaintiff wrote immediatly after non-emergency trips to Uconn hospital resumed and was told that he is on the list to be seen by the GI specialist and to write back or sign up for prompt care if his symptoms worsen.

4

20) On October 7, 2020, the plaintiff's aunt called the Warden's office to complain about his health issues and the lack of adequate care and was told by the warden's secretary that the head of medical would call her to discuss the situation. She received no follow-up from anyone; which then prompted his parents to mail a letter to Warden Barone in November 2020, also in reference to the aforedescribed health complications. This correspondence also received no feedback.

21) On November 23, 2020, the plaintiff's aunt contacted the commissioner's office via phone, and left a detailed voicemail about his pain, significant weight loss and the severe inadequacy of care he was receiving. His aunt received no response to this call.

22) On November 28, 2020, the plaintiff experienced stomach pain so severe that he had to be sent to medical at around 3 A.M. During this visit it was discovered by the attending nurse that he had lost 17 pounds in a 4 month span (since July 7, 2020). This prompted said nurse to place the plaintiff on the urgent visit list.

23) On November 30, 2020, the plaintiff's aunt mailed a letter to the commissioner's office detailing the severity and duration of his pain, the extent of his weight loss and the grossly inadequate medical care. His Aunt received no response to this correspondence.

24) On December 1, 2020, the plaintiff was seen by a new provider and told that he was scheduled for a consultation with the G.I. specialist in January 2021. However, on December 10, 2020, an indefinite moratorium was placed on all non-emergency visits to outside healthcare providers, due to a COVID-19 outbreak in his facility.

5

25) As a result of the foregoing the plaintiff suffered significant physical injuries such as: severe stomach and abdominal pain, severe diarrhea, severe nausea, severe vomitting, significant weight loss, significant loss of appetite, significant loss of physical endurance, significant loss of physical strength and insomnia. The plaintiff also experienced: embarrassment, depression, mood swings, stress and severe anxiety.

Legal Claim

## Count One
## (Deliberate Indifference)

1) The averments set forth in paragraphs one (1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by reference as though fully pleaded, and are hereby renamed as paragraphs one (1) through twenty-five (25), respectively, of count one;

26) The disregard shown by the Defendant, "Commissioner John Doe", to the information he received from the Plaintiff's aunt on or about November 23, 2020, and November 30, 2020, constitute Deliberate Indifference and is therefore actionable in accordance with well established law, in that:

   A) The Defendant, "Commissioner John Doe" was fully advised about the Plaintiff's medical issues and the inadequate care he was receiving and failed to take action to prevent further pain and suffering.

27) As a direct result of the aforedescribed disclosures, the Plaintiff suffered various damages, as more fully set forth in paragraph 25 of count one.

## Count Two
### (Deliberate Indifference)

1) The averments set forth in paragraphs one (1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by reference as though fully pleaded, and are hereby renamed as paragraphs one (1) through twenty-five (25), respectively, of count two;

26) The disregard shown by the Defendant, "Warden Barone", to the information she received from the Plaintiff's aunt and parents on or about October 7, 2020 and November 2020, constitute Deliberate Indifference and is therefore actionable in accordance with well established law, in that:

    A) The Defendant, "Warden Barone" was fully advised about the Plaintiff's medical issues and the inadequate care he was receiving and failed to take action to prevent further pain and suffering.

27) As a direct result of the aforedescribed disclosures, the Plaintiff suffered various damages, as more fully set forth in paragraph 25 of count two.

## Count Three
## (Deliberate Indifference)

1) The averments set forth in paragraphs one (1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by reference as though fully pleaded, and are hereby renamed as paragraphs One (1) through twenty-five (25), respectively, of count three;

26) The disregard shown by the Defendant, "Warden Secretary Jane Doe", to the information she received from the Plaintiff's aunt on or about October 7, 2020, constitute Deliberate Indifference and is therefore actionable in accordance with well established law, in that:

A) The Defendant, "Warden Secretary Jane Doe" was fully advised about the Plaintiff's medical issues and the inadequate care he was receiving and failed to take action to prevent further pain and suffering.

27) As a direct result of the aforedescribed disclosures, the Plaintiff suffered various damages, as more fully set forth in paragraph 25 of count three.

## Count Four
## (Deliberate Indifference)

1) The averments set forth in paragraphs one (1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by reference as though fully pleaded, and are hereby renamed as paragraphs one (1) through twenty-five (25) respectively, of count four;

26) The disregard shown by the Defendant, "RCOO Kirsten Shea", to the information she received from the Plaintiff on or about February 25, 2020, constitute Deliberate Indifference and is therefore actionable in accordance with well established law, in that:

   A) The Defendant, "RCOO Kirsten Shea" was fully advised about the Plaintiff's medical issues and the inadequate care he was receiving and failed to take action to prevent further pain and suffering.

27) As a direct result of the aforedescribed disclosures, the Plaintiff suffered various damages, as more fully set forth in paragraph 25 of count four.

## Count Five
## (Deliberate Indifference)

1) The averments set forth in paragraphs one(1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by reference as though fully pleaded, and are hereby renamed as paragraphs one(1) through twenty-five (25), respectively, of count five;

26) The disregard shown by the Defendant, "APRN McPheesia", to the information she received from the Plaintiff on or about September 11, 2019, January 6, 2020, February 6, 2020, February 7, 2020, and February 18, 2020, constitute Deliberate Indifference and is therefore actionable in accordance with well established law, in that:

A) The Defendant, "APRN McPheesia" was fully advised about the Plaintiff's medical issues and the inadequate care he was receiving and failed to take action to prevent further pain and suffering.

27) As a direct result of the aforedescribed disclosures, the Plaintiff suffered various damages, as more fully set forth in paragraph 25 of count five.

## Count Six
## (Deliberate Indifference)

1) The averments set forth in paragraphs one(1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by reference as though fully pleaded, and are hereby renamed as paragraphs one(1) through twenty-five (25), respectively, of count six;

26) The disregard shown by the Defendant, "APRN Jane Doe", to the information she received from the Plaintiff on or about June 11, 2020, constitute Deliberate Indifference and is therefore actionable in accordance with well established law, in that:

A) The Defendant, "APRN Jane Doe" was fully advised about the Plaintiff's medical issues and the inadequate care he was receiving and failed to take action to prevent further pain and suffering.

27) As a direct result of the aforedescribed disclosures, the Plaintiff suffered various damages, as more fully set forth in Paragraph 25 of count six.

## Count Seven
### (Supervisor Liability)

1) The averments set forth in Paragraphs one(1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by reference as though fully pleaded, and are hereby renamed as paragraphs one (1) through twenty-five (25), respectively, of count seven;

26) Defendant "Commissioner John Doe"'s failure to monitor and properly supervise employees and train them about the importance of providing adequate medical care constitutes Supervisor Liability and is therefore actionable in accordance with well established law, in that:

A) As the highest ranking official in the Department of Correction, it is "Commissioner John Doe"'s duty to ensure that every department in every facility operates adequately:

    1) The Defendant failed to maintain adequate attentiveness to his duties in overseeing the employees responsible for the proper treatment of patients;

    2) The Defendant failed to train, supervise and monitor employees of the medical department as to the task of properly seeing and treating patients;

27) Such acts were the direct causation of the damages suffered by the Plaintiff, which each resulted from any combination of such occurances;

28) The Plaintiff suffered damages as a result of such acts as are further described within paragraph 25 of count seven:

## Count Eight
### (Supervisor Liability)

1) The averments set forth in paragraphs one (1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by reference as though fully pleaded, and are hereby renamed as paragraphs one (1) through twenty-five (25), respectively, of count eight;

26) Defendant "Warden Barone"'s failure to monitor and properly supervise employees and train them about the importance of providing adequate medical care constitutes supervisor Liability and is therefore actionable in accordance with well established law, in that:

A) As the highest ranking official in the facility, it is "Warden Barone"'s duty to ensure that every department in the facility operates adequately:

1) The Defendant failed to maintain adequate attentiveness to her duties in overseeing the employees responsible for the proper treatment of patients;

2) The Defendant failed to train, supervise and monitor employees of the medical department as to the task of properly seeing and treating patients;

27) Such acts were the direct causation of the damages suffered by the Plaintiff, which each resulted from any combination of such occurances;

28) The Plaintiff suffered damages as a result of such acts as are further described within paragraph 25 of count eight.

# Count Nine
## (Supervisor Liability)

1) The averments set forth in paragraphs one (1) through twenty-five (25), inclusive, of this complaint, are incorporated herein by references as though fully pleaded, and are hereby renamed as paragraphs one (1) through twenty-five (25), respectively, of count nine;

26) Defendant "RCOO Kirsten Shea"'s failure to monitor and properly supervise employees and train them about the importance of providing adequate medical care constitutes Supervisor Liability and is therefore actionable in accordance with well established law, in that;

A) As the highest ranking official in the medical department, it is "RCOO Kirsten Shea"'s duty to ensure that every aspect of the medical department operates adequately:

1) The Defendant failed to maintain adequate attentiveness to her duties in overseeing the employees responsible for the proper treatment of patients;

2) The Defendant failed to train, supervise and monitor employees of the medical department as to the task of properly seeing and treating patients;

27) Such acts were the direct causation of the damages suffered by the Plaintiff, which each resulted from any combination of such occurances;

28) The Plaintiff suffered damages as a result of such acts as are further described within paragraph 25 of count nine.

4.

5.

6.

7.

8.

9.

10.

If you need more space, attach additional pages, but be as brief as possible.

E.    REQUEST FOR RELIEF
Tell the court what kind of relief you want.  Remember: (1) You can only get money damages for mental or emotional injury if you were also physically injured; (2) Money damages may be reduced to pay restitution to victims of your crime and fees for a court-appointed attorney, if you had one; (3) You cannot use a Section 1983 or *Bivens* action to request release from custody, a reduction in your sentence, or a restoration of good time credits.  For any of these, you must request a Writ of Habeas Corpus.

Compensatory Damages - $150,000.00

Punitive Damages - $150,000.00

*Revised 4/13/18*

6

F.    DO YOU WISH TO HAVE A JURY TRIAL?   YES  ✓  NO____

G.    DECLARATION UNDER PENALTY OF PERJURY

Warning: You must sign this or your complaint will not be filed.

By signing this complaint, I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of my knowledge.   I understand that if I lie in this complaint, I may be prosecuted for perjury, and punished with as much as five (5) years in prison and/or a fine of $250,000.   See 18 U.S.C. Sections 1621, 3571.

Signature: _Christopher M Plaskon_

Signed at _MacDougal Correctional Institution_ on _12/21/20_
                      (Location)                                          (Date)

If there are additional plaintiffs, attach another page with the name and signature of each plaintiff on it.   **The complaint cannot be filed without a signature from each plaintiff.**

H.    FINAL INSTRUCTIONS

WARNING: Your complaint will not be filed unless you complete each of these steps:

   1.    Answer all questions on the complaint form.

   2.    Sign the Declaration under Penalty of Perjury on p. 7

Remember, the Clerk cannot file your complaint unless you take all of the steps above.

*Revised 4/13/18*